UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AUBURN CHEVROLET-OLDSMOBILE-
CADILLAC, INC.,

                              Plaintiff,

          v.                                        Civil Case No. 5:06-CV-0362 (GTS/GJD)

THELDON R. BRANCH, III,

                              Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

BOND, SCHOENICK & KING, PLLC                        LOUIS ORBACH, ESQ.
   Counsel for Plaintiff
One Lincoln Center
Syracuse, NY 13202

HARRIS, BEACH LLP                                   RUSSELL E. MAINES, ESQ.
   Counsel for Defendant
P.O. Box 580
119 East Seneca Street
Ithaca, NY 14851-0580

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

Plaintiff Auburn Chevrolet-Oldsmobile-Cadillac, Inc. ("Plaintiff") commenced this

action against its former president and director, Defendant Theldon R. Branch, III ("Defendant"),

seeking judgment for (1) breach of fiduciary duty (including misappropriation, diversion and

waste of corporate assets), (2) fraud, (3) conversion, (4) money paid by mistake, (5) breach of

contract, and (6) unjust enrichment.  (Dkt. No. 1, ¶ 1 [Plf.'s Compl.].)  Plaintiff is a Delaware

Corporation doing business in New York.  (*Id*. at ¶ 2.)  Defendant is a citizen of Texas.  (Dkt.

No. 36, Part 4, at 6 [Branch Dep. Tr.].)  The amount in controversy in this action exceeds

$75,000.  (Dkt. No. 1, ¶ 2 [Plf.'s Compl.].)  Therefore, jurisdiction in this action is based upon diversity of citizenship.

Currently before the Court is Plaintiff's motion for partial summary judgment in the amount of $189,555.70 on its claim for breach of fiduciary duty.  (Dkt. No. 36, Part 8, at 2.) Specifically, Plaintiff seeks judgment regarding (1) a $58,372.10 check that Defendant allegedly misappropriated on July 6, 2004, (2) a $100,000 wire transfer allegedly made to a "Branch Companies Inc." account at Wells Fargo Bank on August 3, 2004, and (3) a $31,183.60 check that Defendant allegedly misappropriated to a Branch Companies account on October 22, 2004. (Dkt. No. 36, Part 8, at 2-8.)[1]  For the reasons set out below, the Court grants Plaintiff's motion.

## I.      LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a

---

[1]       In his deposition, Defendant testified that "Branch Companies Inc." is "the family business" that he founded with his parents in Houston, Texas, years before he became president of Plaintiff.  (Dkt. No. 36, Part 4, at 6-7 [Branch Dep. Tr.].)

genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

As for the *materiality* requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248 [citation omitted].

As for the *genuineness* requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a *genuine* issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted; emphasis added]; *see also* Fed. R. Civ. P. 56(e)(2).[2]  Similarly, inadmissible hearsay is insufficient to create a *genuine* issue of fact, "absent a showing that admissible evidence will be available at trial."  *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) [citations omitted].  Moreover, "an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony" is insufficient to create a *genuine* issue of fact.  *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) [citations omitted].

Finally, as this Court has previously observed, "It is well established that issues of credibility are *almost never* to be resolved by a court on a motion for summary judgment."  *Cruz v. Church*, 05-CV-1067, 2008 WL 4891165, at *4 & n.6 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.)

---

[2]       As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) [citations omitted].

[emphasis in original; collecting cases].  However, "there is a *narrow exception* to this well-established rule." *Cruz*, 2008 WL 4891165, at \*4 [citation omitted].  In *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit explained that this narrow exception is for testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant.  *Cruz*, 2008 WL 4891165, at \*4 & n.7 [collecting cases].  "Again, it must be remembered that the circumstances giving rise to this exception are rare.'"  *Id.* & n.7 [collecting cases].

## II.    BACKGROUND

### A.    Statement of Undisputed Material Facts

Defendant was the president of Plaintiff, and a member of Plaintiff's Board of Directors, from December 11, 2002, until December 14, 2004.  (Dkt. No. 41, Part 2, ¶¶ 1-2 [Def.'s Rule 7.1 Response].)  Defendant was also a minority shareholder of Plaintiff because he owned "fifteen something percent" of Plaintiff upon his investment of $410,000 in Plaintiff.  (Dkt. No. 36, Part 4, at 17-18 [Branch Dep. Tr.].)  General Motors Corporation ("GM") owned the remaining balance of the shares in Plaintiff, affording GM a majority of Plaintiff's voting power.  (*Id.*; Dkt. No. 41, Part 2, ¶ 4 [Def.'s Rule 7.1 Response].)

During Defendant's time as president of Plaintiff, Plaintiff's business consisted of operating an automobile dealership in Auburn, New York.  (Dkt. No. 41, Part 2, ¶ 3 [Def.'s Rule

7.1 Response].)  As president, Defendant was responsible for running the day-to-day operations

of the dealership.  (*Id.* at ¶ 5.)  Throughout Defendant's tenure as president of Plaintiff, Plaintiff

maintained its bank accounts at Fleet Bank, which later became Bank of America.  (*Id*. at ¶ 6.)

### 1.      The $58,372.10 Check

On or about July 6, 2004, Defendant endorsed a check that was drawn on Plaintiff's bank

account and made payable to himself in the amount of $58,372.10, and gave it to his wife.  (*Id.* at

¶ 7; *see also* Dkt. No. 41, Part 1, ¶ 7 [Def.'s Rule 7.1 Response, providing accurate records

citations].)  Defendant never advised Plaintiff's Board of Directors of his receipt of the

$58,372.10 dealership check, either before or after receiving it.  (Dkt. No. 41, Part 2, ¶ 8 [Def.'s

Rule 7.1 Response].)[3]  Defendant never advised Plaintiff's Board of Directors that he was lending

money to Plaintiff to cover payroll, as Section 12.4 of Plaintiff's bylaws requires.  (Dkt. No. 41,

Part 2, ¶¶ 9-10 [Def.'s Rule 7.1 Response].)[4]

### 2.      The $100,000 Wire Transfer

On July 7, 2004, Defendant made a loan to Plaintiff that was authorized by the Board.

(Dkt. No. 36, Part 2, ¶ 7 [Mozingo Decl.].)  The loan was evidenced by an Interest-Bearing

---

[3]      Defendant asserts that the $58,372.10 check was given as repayment for payroll
expenses that he had covered in June 2004 when the dealership was "out of cash."  (Dkt. No. 36,
Part 4, at 30-33 [Branch Dep. Tr.].)  Defendant further asserts that "[t]he check was signed by
Ms. Merrill [then the secretary-treasurer of Plaintiff] and counter signed by Kristin Butler [then
the executive manager of Plaintiff], both with full knowledge of my entitlement."  (Dkt. No. 40,
Part 1, ¶ 13 [Branch Decl.].)  Kelly Merrill acknowledges writing the check, but swears that the
"$58,372.10 check was not a reimbursement owed to Mr. Branch for 'expenses paid on behalf of
Plaintiff' as he suggests in paragraph 13 of his declaration," nor was it "a repayment owed to Mr.
Branch for any reason."  (Dkt. No. 43, Part 3, ¶ 6 [Merrill Decl.].)

[4]      Defendant argues that Section 5.8 and Section 7.1 of the bylaws, when read
together, authorized him to cover Plaintiff's payroll and to be repaid the $58,372.10 amount he
was owed from covering the payroll.  (Dkt. No. 41, Part 2, ¶¶ 11-13 [Def.'s Rule 7.1 Response].)

Promissory Note ("Note"), which indicated that Plaintiff promised to pay Defendant $438,000 plus 10% interest per annum, accruing from the date of execution, in full, by the earlier of March 31, 2005 or the time either GM or Defendant ceases to be a stockholder of Plaintiff.  (Dkt. No. 36, Part 5 [Exh. B, at 17].)  On December 23, 2004, Plaintiff paid Defendant $457,101.57, in full satisfaction of the Note.  (*See* Dkt. No. 36, Part 2, ¶ 7 [Mozingo Decl.].)

On August 3, 2004, $200,000 was transferred by wire from Plaintiff's account to a "Branch Companies Inc." account at Wells Fargo bank in Houston, Texas.  (Dkt. No. 41, Part 2, ¶ 14 [Def.'s Rule 7.1 Response].)[5]  Plaintiff did not owe the Branch Companies $200,000 when the wire transfer occurred.  (Dkt. No. 41, Part 1, ¶ 15 [Def.'s Rule 7.1 Response].)  Defendant knew about the wire transfer "within a day of the transaction."  (Dkt. No. 41, Part 2, ¶ 16 [Def.'s Rule 7.1 Response].)  Defendant decided to treat the wired $200,000 as his own money.  (*Id.* at ¶ 17.)  Defendant never informed any member of the Board that $200,000 had been wired to the Branch Companies account on August 3, 2004.  (*Id.* at ¶ 18.)[6]  In November 2004, Defendant returned $100,000 to Plaintiff via two $50,000 wire transfers from the same Branch Companies account to which the $200,000 had been wired on August 3, 2004.  (*Id.* at ¶ 19.)

---

[5]      According to Defendant, Kelly Merrill, acting in her capacity as the secretary-treasurer of Plaintiff, transferred these funds to Defendant's wife, without Defendant's instruction, since "[i]t is a fact that Ms. Merrill was fully aware of and communicated with Mrs. Branch regularly about the status of repayments."  (Dkt. No. 40, Part 1, ¶ 14 [Branch Decl.].)  According to Kelly Merrill, the funds were transferred on August 3, 2004, "pursuant to Mr. Branch's instruction" and, although "[h]e did not tell me why he wanted me to make that wire transfer[, he indicated] . . . that I had to do it immediately."  (Dkt. No. 43, Part 3, ¶ 7 [Merrill Decl.].)

[6]      According to Defendant, he did not refund the money or bring his receipt of the money to the attention of the Board because he "had a good faith belief [that] the money was his own."  (Dkt. No. 40, Part 2,  ¶ 14 [Branch Decl.].)

### 3.    The $31,183.60 Check

On October 22, 2004, a GM check made payable to Plaintiff in the amount of $31,183.60 was deposited into the Branch Companies account at Wells Fargo bank in Houston, Texas.  (*Id*. at ¶ 20.)[7]  Plaintiff's company policy required that all checks made payable to Plaintiff be deposited in Plaintiff's bank account.  (*Compare* Dkt. No. 36, Part 7, ¶ 22 [Plf.'s Rule 7.1 Statement, asserting referenced fact, and supporting that assertion with accurate record citations] *with* Dkt. No. 41, Part 2, ¶ 22 [Def.'s Rule 7.1 Response, supporting his denial of referenced fact with record citation to a statement that is not material, nor is it evidence pursuant to 28 U.S.C. § 1746].)

### B.    Relevant Bylaws and Stockholder Ratifications

The Minutes of the Organizational Meeting of the Board of Directors with Stockholders Ratification dated December 11, 2002 (the date that Defendant became president, shareholder and Board member), provide "that in order to fully carry out the intent and effectuate the purposes of the foregoing resolutions, the proper officers of [Plaintiff] are hereby authorized to

---

[7]      According to Defendant, the $31,183.60 check was "given to Mrs. Branch by Kelly Merrill to apply towards outstanding balances owed for payments in cash and other equivalents for expenses, services, personnel, etc. on behalf of and for the benefit of [Plaintiff] that were made by Mrs. Branch at my [or the Controller's] request."  (Dkt. No. 40, Part 1, ¶ 16 [Branch Decl.].)  Defendant asserts that "while protocol may not have been followed as it relates to documentation and/or notification to GM and its board members, time was of the essence, since Mrs. Branch was one of the dealerships [sic] main sources to obtain immediate fusion of cash, or provider of services that the dealership just could not afford."  (*Id*.)  Defendant also asserts that depositing this check in the Branch Companies account was not improper because he "had authority [under the relevant bylaws and resolutions] to take actions that were in [his] judgment necessary, proper or advisable."  (*Id*.)  The Court notes that during Defendant's deposition, when the check was presented to him, he testified that he had never seen the check before, that he was not sure what the check was for and that he could not think of any reason why it would have been appropriate for the check to be deposited in the Branch Companies account.  (Dkt. No. 36, Part 4, at 62-63 [Branch Dep. Tr.].)

take all such further actions, and to execute and deliver all such further instruments and documents in the name and on behalf of [Plaintiff] and under its corporate seal or otherwise, and to pay all such fees and expenses, which shall in their judgment be necessary, proper or advisable."  (Dkt. No. 41, Part 2, ¶ 2 [Def.'s Rule 7.1 Counter Stmt.].)

The "foregoing resolutions" that the Minutes refer to include Section 12.4, Section 7.1 and Section 5.8 of Plaintiff's bylaws.  Section 12.4 of Plaintiff's bylaws, in effect throughout Defendant's tenure with Plaintiff, provides that "[t]he board must authorize all loans made or contracted on the corporation's behalf and all evidences of indebtedness issued in the corporation's name."  (Dkt. No. 41, Part 2, ¶ 10 [Def.'s Rule 7.1 Response].)  Section 7.1 of Plaintiff's bylaws, in effect throughout Defendant's tenure with Plaintiff, provides that "[w]ithout the vote or written consent of the holders of shares with a majority of the corporation's voting power, neither the officers nor the Board may . . . increase or decrease the corporation's capital or . . . pledge, hypothecate, or otherwise encumber the corporation's assets . . . ."  (*Id*. at ¶ 11.)  Section 5.8 of Plaintiff's bylaws, in effect throughout Defendant's tenure with Plaintiff, provides, in pertinent part, that "[t]he treasurer will (a) have the custody of the corporation's funds and securities, and (b) maintain good accounting records and maintain the corporation's books in accordance with procedures approved by the board, and render to the president and board (at its regular meetings and at other times when the board requests) financial and operational information of the corporation."  (Dkt. No. 36, Part 5, at 9 [Exh. B to Orbach Decl.].)

## III.   CHOICE OF LAW

Plaintiff argues that, because this action is based on diversity of citizenship, the Court

must apply the choice-of-law rules of the forum state, which here is New York.  (Dkt. No. 36, Part 7, at 8 [Plf.'s Mem. of Law].)  Plaintiff further argues that courts applying New York's choice-of-law rules generally hold that a breach-of-fiduciary-duty claim is governed by the law of the defendant's state of incorporation, which here is Delaware.  (*Id*. at 8-9.)  Finally, Plaintiff argues that, because there is no conflict between the law of Delaware and the law of New York with regard to the legal principles governing Plaintiff's claims, the Court may rely on both Delaware law and New York law.  (*Id*. at 9.)  In his opposition memorandum of law, Defendant does not address this argument.  (*See generally* Dkt. No. 42.)  As a result, Defendant has effectively "consented" to this argument under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[8]

In any event, even if the Court were to subject Plaintiff's argument to the more rigorous scrutiny appropriate for a contested argument, the Court would agree with Plaintiff.  When jurisdiction is based on diversity, "[a] federal court . . . must apply the choice of law rules of the forum state."  *Buckley v. Deloitte & Touche USA LLP*, 06-CV-3291, 2007 WL 1491403, at *13 (S.D.N.Y. May 22, 2007) [citation omitted]).  "Pursuant to New York's choice of law rules–and specifically the 'internal affairs doctrine'–a claim of breach of fiduciary duty owed to a corporation is governed by the law of the state of incorporation."  *Buckley*, 2007 WL 1491403, at *13 [citation omitted].  Finally, the Court can discern no material difference between Delaware

---

[8]      *See White v. Verizon Communs., Inc.*, 06-CV-1536, 2008 U.S. Dist. LEXIS 101988, at *10 & n.8 (N.D.N.Y. Dec. 17, 2008) (Suddaby, J.) [citing cases]; *McDonald v. Gonzales,* 05-CV-0055, 2007 U.S. Dist. LEXIS 21720, at *24-25 (N.D.N.Y. March 27, 2007) (McAvoy, J.) [citing cases]; *Topliff v. Wal-Mart Stores, E. LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *86 & n.153 (N.D.N.Y. March 22, 2007) (Lowe, M.J.) [citing cases].

law and New York law with regard to the legal principles governing Plaintiff's claims.

For these reasons, the Court concludes that it may rely on either Delaware law or New York law in deciding Plaintiff's motion.

## IV.    ANALYSIS

Under Delaware law, "both officers and directors of a corporation owe fiduciary duties to the company and its shareholders." *Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1116 n.75 (Del.Ch. 2008).  Moreover, mismanagement, misappropriation, and or diversion of corporate assets constitutes a breach of fiduciary duty.  *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D.Del. 1981); *Technicorp Intern. II, Inc. v. Johnston*, CV-15084, 2000 WL 713750, at *45 (Del.Ch. May 31, 2000) (adopting the view that "[i]f corporate fiduciaries divert corporate assets to themselves for non-corporate purposes, they are liable for the amounts wrongfully diverted.").

### A.    The $58,372.10 Check

In support of its request for the entry of summary judgment on its breach-of-fiduciary-duty claim with regard to the $58,372.10 check issued on July 6, 2004, Plaintiff advances a two-part argument: (1) even assuming that Defendant is correct that the $58,372.10 check was issued to him in order to repay a loan he made to Plaintiff in June 2004 (to cover its payroll expenses), Defendant has breached his fiduciary duty to Plaintiff by making such a loan to Plaintiff without first obtaining the authorization of Plaintiff's Board of Directors, as required by Section 12.4 of Plaintiff's bylaws; and (2) in any event, Defendant has failed to adduce any admissible record evidence that he actually made such a loan to Plaintiff in June 2004 (or at any time), nor has he adduced any admissible record evidence that such a self-dealing transaction was fair to Plaintiff.

10

(Dkt. No. 36, Part 8, at 10-12 [Plf.'s Mem. of Law].)

In response, Defendant argues that he did not breach his fiduciary duty by making such a loan to Plaintiff for two alternative reasons: (1) on December 11, 2002, Plaintiff's Board of Directors passed a resolution (with the Stockholders' ratification) authorizing Defendant to take all such actions that, in their judgment, are "necessary, proper or advisable" to achieve the purpose of Plaintiff's corporate resolutions; and (2) on August 23, 2003, Plaintiff's Board of Directors passed a resolution authorizing Plaintiff to borrow from Defendant up to $100,000 in unsecured debt.  (Dkt. No. 42, at 2, 4 [Def.'s Opp. Mem. of Law]; Dkt. No. 40, Part 1, ¶¶ 8, 11 [Branch Decl.]; Dkt. No. 40, Parts 2, 3 [Exs. A, B to Branch Decl.].)  In addition, Defendant argues that, in June 2004, he in fact made a loan to Plaintiff to cover its payroll expenses.  (Dkt. No. 42, at 2 [Def.'s Opp. Mem. of Law]; Dkt. No. 40, Part 1, ¶ 13 [Branch Decl.].)

In reply, Plaintiff argues that (1) Defendant admits receiving the dealership check made payable to himself in the amount of $58,372.10 without advising Plaintiff's Board of Directors of that receipt, and (2) Defendant has failed to adduce any admissible record evidence that he actually made such a loan to Plaintiff in June 2004 (or at any time), because his declaration is vague, contradictory to his deposition transcript, and not adequately verified (under 28 U.S.C. § 1746), and because Exhibit D thereto is unauthenticated hearsay.  (Dkt. No. 43, Part 1, at 1-4 [Plf.'s Reply Mem. of Law].)

### 1.  Whether Defendant Lent Money to Plaintiff in June 2004

In his deposition, Defendant testified that, in the second-half of June 2004, he made a loan to Plaintiff to cover its payroll expenses.  (Dkt. No. 36, Part 4, at 31-34, 36-37 [Ex. A to Orbach Decl., attaching pages "89," "90," "91," "92," "96," and "97" of Branch Dep. Tr.].)

11

Ordinarily, this evidence would be sufficient to create a question of fact for the jury on the issue of whether Defendant indeed made such a loan, since issues of credibility are generally not to be resolved by a court on a motion for summary judgment.  However, the Court is mindful of the narrow exception to the general rule for testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant.  *See*, *supra*, Part I of this Decision and Order.

With regard to the first requirement, the Court finds that Defendant's deposition testimony would constitute the exclusive basis for a finding that a question of fact exists on the issue of whether Defendant made the loan in question.  Plaintiff is correct that Defendant's Declaration is vague and does not expressly assert that Defendant made a loan to Plaintiff in June 2004 to cover its payroll expenses, but merely asserts that the amount in question "was applied to expenses paid on behalf of the Dealer Companies."  (Dkt. No. 40, Part 1, ¶ 13 [Branch Decl.].)[9]  Plaintiff is also correct that Defendant's Declaration is arguably not even adequately

---

[9]      *See Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir.1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings"); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places . . . . It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985).

verified since its assertions are limited "to the best of [Defendant's] knowledge."[10]  Finally, Plaintiff is correct that Exhibit D thereto is unauthenticated hearsay.  (Dkt. No. 40, Part 1, ¶¶ 12.h., 14, 15, 18 [Branch Decl., citing Ex. D thereto]; Dkt. No. 40, Part 4 [Ex. D to Branch Decl.].)

The Court notes that it can find nothing in either Exhibit C or Exhibit D reflecting any transfer of approximately $58,372.10 from Defendant to Plaintiff (or to any third-party payroll service) in June 2004.  (Dkt. No. 40, Parts 3, 4 [Exs. C and D to Branch Decl.].)[11]  The Court also notes that, contrary to Defendant's assertion that Kelly Merrill (Plaintiff's secretary-treasurer during the time in question) knew of his "entitlement" to the funds in question (*see* Dkt. No. 43, Part 3, ¶ 13 [Merrill Decl.]), Ms. Merrill has sworn that she did not issue the $58,372.10 dealership check in question to reimburse Defendant for any sort of loan, but to comply with his instruction to "write a dealership check paying over to him all the funds that were then readily

_____

[10]     *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir.2004) ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M .C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988) ("[Defendant's] affidavit states that it is based on personal knowledge or upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *cf. Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir.1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y.1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F.2d 1147 (2d Cir.1993).

[11]     The Court notes that the $438,000 loan made by Defendant to Plaintiff in July 2004, and the two $50,000 wire transfers from Defendant to Plaintiff in November 2004, are reflected in Exhibit D, rendering the omission of evidence of the $58,372.10 loan conspicuous. (*See* Dkt. No. 40, Part 4 [Ex. D to Branch Decl.].)

available from the dealership's accounts." (Dkt. No. 43, Part 3, ¶ 6 [Merrill Decl.])

Turning to the second requirement, the Court finds that Defendant's deposition testimony is vague as to (1) when in late-June 2004 he made the loan, (2) how he made the loan, (3) to whom the loan amount was transferred, (4) from which account the loan amount was transferred, (5) what the precise amount of the loan was, and (6) whether the loan was to cover weekly payroll or biweekly payroll.  (*See* Dkt. No. 36, Part 4, at 31-34, 36-37 [Ex. A to Orbach Decl., attaching pages "89," "90," "91," "92," "96," and "97" of Branch Dep. Tr.].)  Under the circumstances, the issue is whether this deposition testimony is so lacking in credibility (because it is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to Defendant, no reasonable jury could find that, in the second-half of June 2004, Defendant made a loan to Plaintiff to cover its payroll expenses.  After carefully considering the matter, the Court must answer this question in the negative, although it notes that this testimony would constitute the slimmest of reeds upon which to base a finding that such a loan occurred.

However, this does not end the Court's inquiry because Plaintiff argues that, even if Defendant extended such a loan to Plaintiff, he would have breached his fiduciary duty to Plaintiff by doing so because (1) the Board did not authorize the loan in question, and (2) in any event, Defendant has not met his burden of showing the loan was fair to Plaintiff.

### 2.    Whether Plaintiff's Board Authorized the Loan in Question

As explained above, Section 12.4 of Plaintiff's bylaws state that "[t]he board must authorize all loans made or contracted on the corporation's behalf and all evidences of indebtedness issued in the corporation's name."  *See*, *supra*, Part II.B. of this Decision and Order.

14

As also explained above, Defendant essentially argues that the Board did so authorize the loan in question through (1) the Board's resolution of December 11, 2002, and/or (2) the Board's resolution of August 26, 2003.

As factual support for his argument that the Board's resolution of December 11, 2002, authorized him to take all further actions that, in their judgment, are "necessary, proper or advisable" to achieve the purpose of Plaintiff's corporate resolutions, Defendant cites Paragraph 11 of his Declaration, and Exhibit B thereto. (Dkt. No. 42, at 4 [Def.'s Opp. Mem. of Law].) Paragraph 11 of Defendant's Declaration quotes the relevant portion of Exhibit B. (Dkt. No. 40, Part 1, ¶ 11 [Branch Decl.].) The relevant portion of Exhibit B states,

> FURTHER RESOLVED, that the By-laws attached hereto are hereby approved and adopted as the Dealer Company's By-laws.
> . . .
>
> FURTHER RESOLVED, that in order *to fully carry out the intent and effectuate the purposes of the foregoing resolutions*, the proper officers of the Dealer Company are hereby authorized to take all such further actions, and to execute and deliver all such further instruments and documents in the name and on behalf of the Dealer Company and to pay all such fees and expenses, which shall in their judgment be necessary, proper or advisable.

(Dkt. No. 40, Part 3, at 3, 13 [Ex. B to Branch Decl.] [emphasis added].)

Based on this evidence, the Court is unable to find any rational basis to conclude that the Board's resolution of December 11, 2002, authorized Defendant to make the loan in question for two reasons. First, the Court disagrees with Defendant that the express language of this resolution says anything about Defendant paying Plaintiff's fees and expenses in his personal capacity rather than in his capacity as president of Plaintiff. Second, the resolution expressly states that the power in question is conferred "to fully carry out the intent and effectuate the

purposes of the foregoing resolutions," which include Section 12.4 of Plaintiff's bylaws; to reason that the provision in question implements Section 12.4 of the bylaws by eviscerating Section 12.4 would be nonsensical.

As factual support for Defendant's alternative argument that the Board's resolution of August 26, 2003, authorized Plaintiff to borrow from Defendant up to $100,000 in unsecured debt, Defendant cites Paragraph 8 of his Declaration, and Exhibit A thereto. (Dkt. No. 42, at 2, 4 [Def.'s Opp. Mem. of Law].) Paragraph 8 of Defendant's Declaration states, in pertinent part,

> [A]t a special meeting of the Board of Directors on August 26, 2003, the company was given authority to borrow up to $100,000.00. A document . . . supplied to me in the plaintiff response to discovery is attached as Exhibit A, which purports to be minutes of the special meeting. The minutes state that the company has authority to borrow, provided the unpaid loans do not exceed "$0.0.," which makes no sense. In fact, the number that was agreed upon is $100,000, not $0. The accurate number is recited in Kelly Merrill's certification of those same minutes, on the subsequent page.

(Dkt. No. 40, Part 1, ¶ 8 [Branch Decl.].) Exhibit A to Defendant's Declaration states, in pertinent part,

> FURTHER RESOLVED: That effective January 13th, 2003 the funds of this company shall be deposited in:
>
> > Fleet Bank
> > Auburn, NY
>
> FURTHER RESOLVED: That . . . *notes* and acceptances of this company *shall be* honored by such bank(s) only when *signed on its behalf by two of the following*, one of whom must be an officer:

| NAME | OFFICE |
|---|---|
| Theldon R. Branch, III | President |
| Kelly M. Merrill | Secretary-Treasurer |
| Kriston G. Butler | Executive Manager |

. . .

16

> FURTHER RESOLVED: That this company is authorized to borrow
> on an unsecured basis *from said bank(s)* such sums of money as
> necessary, provided that the amount of unpaid loans, exclusive of
> interest, shall not at any time exceed $0.00; and the President and
> Treasurer are authorized to join in executing a note or notes for that
> purpose . . . .

(Dkt. No. 40, Part 2, at 2 [Ex. A to Branch Decl.] [emphasis added].)  Furthermore, Ms. Merrill's

certification of those minutes state, in pertinent part,

> RESOLVED: That effective August 25, 2003 the funds of this
> company shall be deposited in:
>
> > Fleet Bank
> > 185 Grant Ave.
> > Auburn, NY
>
> FURTHER RESOLVED: That . . . *notes*, and acceptances of this
> company *shall be* honored by such bank(s) only when *signed on its*
> *behalf by two of the following three people*, of which <u>one</u> must be an
> officer of the company:
>
> > | <u>Name</u> | <u>Office</u> |
> > |---|---|
> > | Theldon R. Branch, III | President |
> > | Kelly M. Merrill | Secretary-Treasurer |
> > | Kriston G. Butler | Executive Manager |
>
> . . .
>
> RESOLVED: That this company is authorized to borrow on an
> unsecured basis *from said bank(s), and/or G.M.A.C.*, such sums of
> money as necessary, provided that the amount of unpaid loans,
> exclusive of interest, shall not at any time exceed $100,000; and the
> President and Secretary-Treasurer are authorized to *join in executing a*
> *note or notes* for that purpose . . . .

(*Id*. at 4 [emphasis added].)

Based on this evidence, the Court is unable to find any rational basis to conclude that the

Board's resolution of August 26, 2003, authorized Defendant to make the loan in question for

two reasons.  First, the resolution only authorized Plaintiff to borrow up to $100,000 in

unsecured debt from Fleet Bank and/or G.M.A.C., not from Defendant.  Second, when construed

with the other resolutions of August 26, 2003, the resolution implicitly (if not explicitly) requires

that Plaintiff's receipt of such a loan be conditioned on its issuance of a note executed by the

president and secretary-treasurer (which did not occur here).

      For all these reasons, the Court concludes that, based on the current record, no rational

fact finder could conclude that Plaintiff's Board authorized the loan in question.

### 3.     Whether Defendant Has Shown Loan Was Fair

      Even if the Court were to find that Plaintiff's Board (through its resolutions of December

11, 2002, and/or August 26, 2003) authorized Plaintiff to take out loans from persons or entities

other than Fleet Bank and/or G.M.A.C. without the issuance of a note, Defendant would still

have the burden of showing that the loan in question was fair to Plaintiff since he was on both

sides of the transaction.

      "Directors of Delaware corporations are fiduciaries who owe duties of due care, good

faith and loyalty to the company and its stockholders."  *Skeen v. Jo-Ann Stores, Inc*., 750 A.2d

1170, 1172 (Del. 2000).  "[T]he duty of loyalty . . . requires that directors act in the best interest

of the company and prohibits them from using their positions as directors to further their own

self-interest."  *Kahn v. Portnoy*, CV-3515, 2008 WL 5197164, at *5 (Del. Ch. Dec. 11, 2008)

[citations omitted].  "[T]o establish a breach of duty of loyalty, [plaintiff] must present evidence

that the director either was on both sides of the transaction or derive[d] any personal financial

benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the

corporation or all stockholders generally."  *Cede & Co. v. Technicolor Inc*., 634 A.2d 345, 363

(Del. 1993) [citation and internal quotations omitted].  Once the plaintiff "prove[s] that the

defendant was on both sides of the transaction[,] . . . [t]he burden then shifts to the defendant to prove that the transaction was entirely fair." *In re The Brown Schools*, 386 B.R. 37, 47 (Bankr. D.Del. 2008) (citing *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 [Del. 1983]).  The entire fairness inquiry has two basic aspects: (1) fair dealing or fair process, and (2) fair price.  *Oliver v. Boston University*, CV-16570-NC, 2006 WL 1064169, at *18 (Del. Ch. Apr. 14, 2006) (citing *Weinberger*, 457 A.2d at 711).[12]

Here, because Defendant was the president, and a director, of Plaintiff during the time in question, Defendant was on both sides of the loan transaction that allegedly occurred in June 2004.  As a result, the burden shifts to the him to prove that the transaction was entirely fair.  Determining fairness is a factual inquiry, requiring the fact finder to evaluate the circumstances giving rise to, and constituting, the transaction in question (e.g., when and why the loan was made, the amount loaned, the interest rate charged, the payment schedule, whether the parties were in equal bargaining positions, etc.).[13]  Because of the vagueness of the details offered by

---

[12]        "Section 144 of the Delaware General Corporation Law provides a safe harbor for interested transactions, if 'the material facts as to the director's . . . relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors . . . and the board . . . in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors . . . .'"  *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906 A.2d 114, 120 (2006) (citing 8 Del. C. § 144(a)[1]).  If, as here, the material facts surrounding the contract or transaction are not disclosed to the board of directors, the safe harbor provision does not apply.  *See* 8 Del. C. § 144(a)(1).

[13]        *See, e.g., Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001) (when defendants bear the burden of demonstrating fairness, it must be "prove[n] to the trier of fact that the challenged transaction was 'entirely fair'"); *Weinberger*, 457 A.2d at 711 (noting that the inquiry into fair dealing "embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained" while the fair price inquiry "relates to the economic and financial considerations of the proposed [transaction], including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or

Defendant with regard to the nature of the loan that was allegedly made in June 2004 (*see*, *supra*, Part IV.A.1. of this Decision and Order), the Court finds that no reasonable trier of fact could conclude, from the current record, that Defendant has shown that the loan was fair to Plaintiff. *See*, *e.g.*, *Carlson v. Hallinan*, 925 A.2d 506, 531-33 (Del. Ch. 2006) (holding directors in breach of their fiduciary duties because the transaction occurred without any disclosure of material facts, negotiation, or discussion of terms, and the defendants failed to prove fair price). The Court notes that, while Defendant argues that the Board had authorized such transactions in general, Defendant has utterly failed to show that the transaction that actually occurred was known to the Board in sufficient detail to enable it to render such authorization.

For each of the alternative reasons offered in Parts IV.A.2. and IV.A.3. of this Decision and Order, the Court finds that Defendant breached his fiduciary duty to Plaintiff by accepting the $58,372.10 check allegedly as repayment for the loan in question.

### 4.     Whether Recoupment or Set-Off Is Available to Defendant

The Court finds that Defendant has not met his burden of showing that he is entitled to any recoupment or set-off with regard to that $58,372.10 amount.  As argued by Plaintiff in its reply memorandum of law, recoupment is not available because there is no admissible record evidence that the loan allegedly made by Defendant in late June 2004 and the check issued to Defendant on July 6, 2004 were part of the *same transaction*.  (Dkt. No. 43, Part 1, at 4-5.) *Household Finance Corp. v. Hobbs*, 387 A.2d 198, 199 (Del. Super. Ct. 1978) (noting that "[a]s a general proposition a recoupment must arise out of the same transaction originally sued upon.") As also argued by Plaintiff in its reply memorandum of law, set-off is not available

inherent value of the company's stock.").

because the debts are not mutual in that they do not exist between the same parties in the *same capacity*. (Dkt. No. 43, Part 1, at 6.)  Specifically, the debt of $58,372.10 is owed by Defendant to Plaintiff in his capacity as a fiduciary (since it is the breach of fiduciary duty that gives rise to the debt).  *See, e.g., In re Garden Ridge Corp.*, 338 B.R. 627, 642 (Bankr. D. Del. 2006) (citing with approval case stating that "[f]or mutuality to exist, the debts must exist between the same parties in the same capacity, i.e., each must owe the other in his own name and not as a fiduciary.") [citation omitted].[14]  Viewed from another perspective, permitting a set-off in the current circumstances would "have the effect of excusing or evading [the fiduciary] obligation" owed by Defendant to Plaintiff.  *In re Garden Ridge Corp.*, 338 B.R. at 641 [internal quotation marks and citations omitted].

   **As a result, the Court grants Plaintiff's motion with regard to the $58,372.10 check.**

   **B.     The $100,000 Wire Transfer**

   In support of its request for the entry of summary judgment on its breach-of-fiduciary-duty claim with regard to the $100,000 wire transfer of August 3, 2004, Plaintiff advances the same two-part argument that he did with regard to the $58,372.10 check: (1) even assuming that Defendant is correct that the $100,000 wire transfer occurred in order to repay a loan that Defendant previously made to Plaintiff, Defendant has breached his fiduciary duty to Plaintiff by

---

[14]     *See also Matter of Allbrand Appliance & Television Co., Inc.*, 16 B.R. 10, 12-13 (Bankr. S.D.N.Y. 1980) ("[T]here can be no mutuality when the liability of the one claiming a set off arises from a fiduciary duty . . . .") [internal quotation marks and citations omitted]; *Allegaert v. Perot*, 466 F. Supp. 516, 518 (Bankr. S.D.N.Y. 1978) ("Courts have . . . held that when the liability of the party seeking set-off arises from either a fiduciary duty or a trust, there is a lack of mutuality, and set-off will not be permitted.") [citations omitted].

making such a loan to Plaintiff without first obtaining the authorization of Plaintiff's Board of

Directors, as required by Section 12.4 of Plaintiff's bylaws; and (2) in any event, Defendant has

failed to adduce any admissible record evidence that he had made a loan to Plaintiff that was due

on August 3, 2004, nor has he adduced any admissible record evidence that such a self-dealing

transaction was fair to Plaintiff.  (Dkt. No. 36, Part 8, at 10-12 [Plf.'s Mem. of Law].)

In response, Defendant makes a similar argument as he did with regard to the $58,372.10

check.  (Dkt. No. 42, at 2-4 [Def.'s Opp. Mem. of Law].)  More specifically, he argues that, (1)

on December 11, 2002, and/or August 23, 2003, the Board authorized Plaintiff to incur

indebtedness to Defendant, (2) before August 3, 2004, Defendant's wife, Ester Branch,

"advance[d] payments in cash and/or other equivalents for the benefit of [Plaintiff]," a fact of

which Defendant knew when such advanced payments occurred, and (3) the $100,000 wire

transfer of August 3, 2004, was voluntarily made by Kelly Merrill with the known purpose of

reimbursing Ester Branch for the payments that she previously advanced to Plaintiff.  (*Id.*; *see

also* Dkt. No. 40, Part 1, ¶ 14 [Branch Decl.]; Dkt. No. 40, Part 4 [Ex. C to Branch Decl.].)

In reply, Plaintiff makes a similar argument as he did with regard to the $58,372.10

check.  (Dkt. No. 43, Part 1, at 1-4 [Plf.'s Reply Mem. of Law].)  Specifically, it argues that (1)

Defendant admits that, on August 3, 2004, a $100,000 wire transfer occurred from Plaintiff's

bank account to a "Branch Companies Inc." bank account, (2) Defendant admits that he never

informed Plaintiff's Board of Directors about the transfer, or returned the $100,000 to Plaintiff,

and (3) Defendant has failed to adduce any admissible record evidence that, before August 3,

2004, Defendant's wife, Ester Branch, "advance[d] payments in cash and/or other equivalents for

the benefit of [Plaintiff]" in an amount equal to or more than $100,000, because his declaration is

vague and not adequately verified (under 28 U.S.C. § 1746), and because Exhibit D thereto is

unauthenticated hearsay.  (Dkt. No. 43, Part 1, at 1-4 [Plf.'s Reply Mem. of Law].)

     For substantially the same reasons that the Court found that summary judgment was

warranted with regard to the $58,372.10 check, the Court finds that summary judgment is

warranted with regard to the $100,000 wire transfer.  Specifically, Defendant has failed to

adduce admissible record evidence from which a rational fact-finder could conclude that, before

August 3, 2004, Defendant's wife, Ester Branch, "advance[d] payments in cash and/or other

equivalents for the benefit of [Plaintiff]" in an amount equal to or more than $100,000, which

were due on August 3, 2004.[15]  In any event, even if Defendant's wife, Ester Branch, had

extended such loans to Plaintiff, Defendant would have breached his fiduciary duty to Plaintiff

*by knowing about those loans and permitting them*, because (1) the Board did not authorize any

such loans, and (2) in any event, Defendant has not met his burden of showing the loans were

fair to Plaintiff.[16]  Finally, the Court finds that Defendant has not met his burden of showing that

he is entitled to any recoupment with regard to that $100,000 because there is no admissible

---

[15]    According to Defendant's own Declaration, he has no personal knowledge of why Kelly Merrill transferred the funds in question (since he purportedly did not instruct her to transfer the funds); rather, he offers mere speculation as to why the transfer occurred.  (*See* Dkt. No. 40, Part 1, ¶¶ 14, 19 [Branch Decl.].)  Moreover, Defendant's reliance on Kelly Merrill's intent during the transfer is misplaced since she has sworn that the $100,000 that was transferred on August 3, 2004, was transferred "pursuant to Mr. Branch's instruction," and that, although "[h]e did not tell me why he wanted me to make that wire transfer[, he indicated] . . . that I had to do it immediately."  (Dkt. No. 43, Part 3, ¶ 7 [Merrill Decl.].)  Finally, the Court can find nothing in either Exhibit C or Exhibit D from which a rational fact-finder could conclude that, before August 3, 2004, Ester Branch advanced payments in cash and/or other equivalents for the benefit of Plaintiff in an amount equal to or more than $100,000.  (Dkt. No. 40, Parts 3, 4 [Exs. C and D to Branch Decl.].)

[16]    *See, e.g., Hallinan*, 925 A.2d at 531-33; *Valeant Pharmaceuticals Intern. v. Jerney*, 921 A.2d 732, 746-50 (Del. Ch. 2007).

record evidence that the (presumably multiple) loans allegedly made by Ester Branch before

August 3, 2004, and the wire transfer made to the "Branch Companies Inc." on August 3, 2004,

were part of the *same transaction*; nor has Defendant met his burden of showing that he is

entitled to any set-off with regard to that $100,000 wire transfer because there is no admissible

record evidence that the debts are mutual in that they are not due to and from the *same person* in

the same capacity.[17]

**As a result, the Court grants Plaintiff's motion with regard to the $100,000 wire**

**transfer.**

      **C.**    **The $31,183.60 Check**

In support of its request for the entry of summary judgment on its breach-of-fiduciary-

duty claim with regard to the $31,183.60 check deposited on October 11, 2004, Plaintiff

essentially argues that Defendant breached his fiduciary duty by depositing (or permitting the

deposit of) the $31,183.60 check in the Branch Companies account because, based on the current

record, it is undisputed that depositing the $31,183.60 check anywhere except in Plaintiff's bank

account was a direct violation of dealership policy.  (Dkt. No. 36, Part 8, at 7 [Plf.'s Mem. of

Law]; Dkt. No. 36, Part 6, at 18 [Ex. J to Orbach Decl.].)

In response, Defendant advances what is essentially a three-part argument: (1) he was

unaware of that check until his deposition was taken in May 2007; (2) in any event, based on

Defendant's information and belief, the $31,183.60 check deposited in the Branch Companies

---

[17]     The Court notes that the debt of $100,000 owed to Plaintiff is due from Defendant
in his capacity as a fiduciary (since it is his status a fiduciary that gives rise to the debt).
However, the debt of $100,000 allegedly owed by Plaintiff is not owed to *Defendant* in his
capacity as a fiduciary, but rather to *Ester Branch* (or arguably the "Branch Companies Inc.").

account on October 22, 2004, was given to Ester Branch by Kelly Merrill to apply towards

outstanding balances owed to Defendant by Plaintiff on October 22, 2004; and (3) in any event,

based on Defendant's information and belief, the $31,183.60 check deposited in the Branch

Companies account on October 22, 2004, was given to Mrs. Branch by Ms. Merrill to partially

compensate her for two $50,000 wire transfers that Ester Branch would make to Plaintiff on

November 2 and 4, 2004.  (Dkt. No. 42, at 3 [Def.'s Opp. Mem. of Law]; Dkt. No. 40, Part 1, ¶¶

16-17 [Branch Decl.]; Dkt. No. 40, Part 4 [Ex. C to Branch Decl.].)

In reply, Plaintiff argues that Defendant has failed to adduce any admissible record

evidence that, before October 22, 2004, Plaintiff had incurred indebtedness to Defendant that

was due on October 22, 2004, or that would be due on November 2 and 4, 2004, because

Defendant's declaration is vague and not adequately verified (under 28 U.S.C. § 1746).  (Dkt.

No. 43, Part 1, at 1-4 [Plf.'s Reply Mem. of Law].)

The Court agrees with Plaintiff for the reasons offered in its memoranda of law.[18]

Defendant admits that the $31,183.60 check was written by GM, made payable to Plaintiff, and

deposited in the Branch Companies account.[19]  Defendant also admits that it was company policy

not to have checks made payable to the company deposited anywhere except in Plaintiff's bank

account.  Plaintiff has offered evidence that the check in question was a reimbursement to

---

[18]        The Court notes that Plaintiff demanded that Defendant account for various
monies, including the $31,183.60, prior to bringing this lawsuit, yet Defendant failed to comply.
This non-compliance is significant, given that "[a] fiduciary is under a duty to keep and render
accounts and, when called upon for an accounting, has the burden of proving that he properly
disposed of funds which he is shown to have received for his principal or trust."  *Technicorp
Intern. II, Inc.*, 2000 WL 713750 at *16.

Plaintiff for paying for approved consulting services by Zeigler Supersystems.  (Dkt. No 36, Part 2, at 33-34 [Ex. D to Mozzingo Decl.].)  Plaintiff has also offered evidence that Plaintiff, not Defendant, had paid Zeigler Supersystems the $31,183.60 for which GM was reimbursing Plaintiff.  (*Id*. at 36-37, 39-40 [Exs. E and F to Mozzingo Decl.].)

Defendant's reliance on Kelly Merrill's intent in purportedly giving the check in question to Ester Branch is misplaced, since Ms. Merrill has sworn that "I certainly never gave the check to Mrs. Branch as Mr. Branch alleges in paragraph 16 of his declaration."  (Dkt. No. 43, Part 3, ¶ 9 [Merrill Decl.].)  The only "evidence" that Defendant is left with is his speculative assertion that the check in question "was given to Mrs. Branch by Kelly Merrill to apply towards outstanding balances owed" to Defendant.  (Dkt. No. 40, Part 1, ¶¶ 16, 17 [Branch Decl.].)[20] Such speculation is insufficient to defeat a motion for summary judgment.

Moreover, Defendant's assertion that he was unaware of the check in question until his deposition was taken in May 2007 is insufficient to avoid liability.  "Each [director] owes [its] company the fiduciary duty to protect the assets of the company."  *USA Soccer Properties, Inc. v. AEGIS Group PLC*, 91-CV-360, 1992 WL 196795, at *8 (S.D.N.Y. Aug. 04, 1992) (citing *Harden v. Eastern States Pub. Serv. Co.*, 122 A. 705 (Del. Ch.1923), and *Finch v. Warrior Cement Corp.*, 141 A. 54 [Del. Ch.1928]).[21]  The Court notes that "[a] director need not know

---

[20]     As Defendant testified in his deposition, the first time he became aware of the existence of the check was at the deposition.  (Dkt. No. 36, Part 4, at 61-62 [Branch Dep. Tr.].)  In addition, the Court notes that it can find nothing in either Exhibit C or Exhibit D from which a rational fact-finder could conclude that, before October 22, 2004, Plaintiff had incurred indebtedness to Defendant that was due on October 22, 2004, or that would be due on November 2 and 4, 2004.  (Dkt. No. 40, Parts 3, 4 [Exs. C and D to Branch Decl.].)

[21]     *See also In re Argo Communications Corp.*, 134 B.R. 776, 789 (Bankr. S.D.N.Y. 1991) ("According to New York case law, a corporate director has a fiduciary duty to manage

that his action breaches a fiduciary duty for liability for that breach to lie: gross negligence is sufficient for breach of the duty of care, and no showing of knowledge is required." *Hexion Specialty Chem., Inc. v. Huntsman Corp.*, CV-3841-VCL, 2008 WL 4457544, at *21, n.88 (Del. Ch. Sept. 29, 2008).[22]   The Court notes that (1) before and after the deposit in question, Defendant was generally aware of attempts by his wife to obtain reimbursement from Plaintiff for various loans (allegedly) made to Plaintiff, and (2) the check in question was deposited in the Branch Companies Account.[23]

Finally, the Court finds that Defendant has not met his burden of showing that he is entitled to any recoupment or set-off with regard to the $31,183.60 amount for reasons similar to those stated above in Parts IV.A.4. and IV.B. of this Decision and Order.

_____

corporate assets in a reasonable way, and he is liable for any waste or misappropriation of corporate property.") [citations omitted].)

[22]    *See also Smith v. Van Gorkom*, 488 A.2d 858, 873 (Del. 1985), *overruled on other grounds*, *Gantler v. Stephens*, No. 132-2008, 2009 WL 188828 (Del. Jan. 27, 2009); *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) ("While the Delaware cases use a variety of terms to describe the applicable standard of care, our analysis satisfies us that under the business judgment rule director liability is predicated upon concepts of gross negligence.") [citation omitted], *overruled on other grounds*, *Gantler v. Stephens*, No. 132-2008, 2009 WL 188828 (Del. Jan. 27, 2009); *Aronson v. Lewis*, 473 A.2d 805, 812, n.6 (Del. 1984) ("While the Delaware cases have not been precise in articulating the standard by which the exercise of business judgment is governed, a long line of Delaware cases holds that director liability is predicated on a standard which is less exacting than simple negligence.") [collecting cases], *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *cf. In re Argo Communications Corp.*, 134 B.R. 776, 789 (Bankr. S.D.N.Y. 1991) (when applying New York law, stating that "[a] director or officer who intentionally or negligently facilitates the waste or mismanagement of corporate assets is liable for damages to the principal that flow from his conduct.").

[23]    *See Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466-67 (1989) (explaining that a fiduciary must avoid "situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty," including dealings with a person "in such close relation [to the fiduciary] that possible advantage to such other person might . . . consciously or unconsciously influence the fiduciary's judgment," such as the fiduciary's wife).

**As a result, the Court grants Plaintiff's motion with regard to the $31,183.60 check.**

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. No. 36) on the claim for breach of fiduciary duty is **GRANTED** in the amount of  $58,372.10 on the 7/6/04 check; in the amount of $100,000 on the 8/3/04 wire transfer; and in the amount of $31,183.60 on the 10/22/04 check for a total amount of $189,555.70; it is further

**ORDERED** that the Plaintiff's remaining causes of action for fraud, conversion, money paid by mistake, breach of contract and unjust enrichment remain pending; and therefore, judgment will not be issued at this time; and it is further

**ORDERED** that counsel for both parties appear at a pretrial conference on March 19, 2009 at 2:00 pm in Chambers in Syracuse, New York before Judge Glenn T. Suddaby.

Dated:  March 10, 2009
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge